MAURO, Acting P. J.
*408 *670 In case No. 16F4167, a jury convicted defendant Douglas Jeremiah Stout of attempted carjacking, attempted kidnapping, *671 criminal threats, carrying a loaded firearm with the intent to commit a felony, possession of a firearm by a felon, assault with a semiautomatic firearm, and possession of ammunition by a felon. The jury also found true allegations that defendant personally used a firearm in the commission of specified felonies. The trial court found true prior prison term and on-bail enhancement allegations and imposed a total state prison term of 35 years 4 months, encompassing three different cases.
Defendant now contends (1) the trial court erred in instructing the jury that the prosecution did not need to prove the exact dates of the crimes, (2) his count 8 conviction for possession of a firearm by a felon must be reversed because he cannot be convicted of two such offenses where there was no break in possession, (3) the firearm use enhancement on the count 4 conviction for carrying a loaded firearm with the intent to commit a felony must be stricken, (4) the trial court should have stayed sentence for attempted carjacking, and (5) the trial court miscalculated defendant's sentence by two months. In supplemental briefing, defendant argues (6) the matter should be remanded for the trial court to exercise its discretion whether to strike the firearm use enhancements pursuant to Senate Bill No. 620 (2017-2018 Reg. Sess.) (Senate Bill 620).
In the published portion of this opinion, we agree with defendant and the Attorney General that the firearm use enhancement on the count 4 conviction for carrying a loaded firearm with the intent to commit a felony must be stricken. Penal Code section 25800, subdivision (a)[1] punishes the passive or static act of carrying a firearm with the intent to commit a felony; the offense is complete when the firearm is carried with that intent. The fact that defendant used the firearm to commit other felonies does not mean he used it in the commission of the section 25800 felony.
In the unpublished portion of the opinion, we conclude the asserted instructional error was harmless, one of defendant's convictions for possession of a firearm by a felon must be reversed, we will remand to allow the trial court to exercise its discretion whether to strike the firearm use enhancements pursuant to Senate Bill 620, and we will direct the trial court on remand to stay sentence on the count 1 conviction for attempted carjacking and its associated firearm use enhancement, unless the trial court decides to strike the enhancement. We also identify a clerical error in the abstract of judgment. Because the trial court must recalculate the aggregate sentence on remand ( People v. Buycks (2018) 5 Cal.5th 857, 893, 236 Cal.Rptr.3d 84, 422 P.3d 531 ), we do not address defendant's fifth contention that the trial court miscalculated defendant's sentence.
*409 *672 BACKGROUND
A.N. testified that around 1:00 pm on June 28, 2016, she drove to a shopping mall in Redding to pick up medication at a pharmacy. Parking near the store entrance, A.N. saw a man (defendant) standing by the entrance and talking on a cell phone. She noticed his teeth were decayed. She passed defendant on her way into the store.
After getting her prescription, A.N. walked to her car. Feeling that someone was standing very close behind her, she turned and saw defendant less than a foot away. She asked him what he was doing, and he answered: "Get in your car or I will fucking kill you." He was pointing a black and silver semiautomatic handgun at her stomach. Fearing for her life, she said "The fuck you will," and pushed him away with one hand, causing him to stumble backward. Defendant departed east toward Water Works Park.
A.N. called 911. An officer took down her description of the suspect, which included his "poor teeth." The next day, she spoke to an investigator and identified defendant immediately from a photo lineup, calling her identification "very, very, very certain"; she mentioned that he had been wearing "cool-guy sunglasses" with amber lenses. She later identified him in a different photo lineup a defense investigator showed her.
In the early afternoon on June 28, Misty M. came home for lunch to her house near Water Works Park. A red Neon in front of her car slowed down as it approached her driveway. A man, later identified as defendant, ran down the driveway and jumped into the Neon. Thinking her house had been burglarized, Misty M. followed the Neon. She pulled alongside and slightly in front of the Neon to block it and repeatedly asked, "What the fuck are you doing in my driveway?" The driver said they were there to see an individual named Dave who lived in another house on the property. Misty M. saw defendant in the passenger seat. She photographed the Neon's license plate, the driver, and defendant before moving her car to let them leave.
Misty M. flagged down Redding Police Officer Rex Berry who had been dispatched to investigate the incident involving A.N. Misty M. described the incident at her premises and e-mailed Officer Berry her photographs of the Neon, along with a link to a photo of defendant. On June 29, officers spotted defendant and arrested him. A body search found a loaded silver and black semiautomatic handgun in his left shorts pocket.
Defendant did not testify at trial. He presented an alibi defense through Dannoll G., the manager of a sporting goods store in Redding.
According to Dannoll G., he encountered defendant (whom he might have seen in his store, but did not know well) at a barbecue event on June 28 or *673 June 29; he was "pretty sure" it was the 28th. Six or seven people, including himself and defendant, were at the barbecue.
Around 1:00 or 2:00 p.m., they ended the barbecue because "thunderheads" were coming in. They went rafting and kayaking on the river. Dannoll G. remembered defendant was there in part because he was inept at kayaking and needed help. A thunderstorm, and possibly hail, hit them on the river. Defendant was with them when they got off the river, but Dannoll G. was not sure whether defendant returned to town with them.
Later, defendant called Dannoll G. more than once at work and asked if he remembered that defendant was with them that day. Dannoll G. originally answered that he remembered defendant was with them, but did not remember the date. Defendant *410 also said he had a GMC truck available if Dannoll G. was looking for one; Dannoll G. assumed defendant was trying to sell the truck, not to offer it as a gift. Dannoll G. said he had paperwork which he had told investigators would confirm the date, but he did not bring it to court.
In rebuttal, Redding Police Detective Paul Slagle testified that when he interviewed defendant on June 29, defendant never mentioned seeing Dannoll G., attending a barbecue, going down the river, or getting rained on the day before. Detective Slagle said defendant claimed he was at a friend's house but did not provide specific timelines and Slagle did not believe defendant mentioned a friend's name. The parties stipulated that Detective Slagle had researched the local weather on June 28. The weather service showed it had been 104 degrees and sunny, with no rain or hail anywhere in the area. Shelby C., a friend of defendant, testified that she picked him up and gave him rides several times on June 28, but did not recall picking him up near the barbecue location or the river.
In case No. 16F4167, the jury convicted defendant of attempted carjacking (§§ 215, subd. (a)/664 -- count 1), attempted kidnapping (§§ 207, subd. (a)/664 -- count 2), criminal threats (§ 422 -- count 3), carrying a loaded firearm with the intent to commit a felony ( § 25800 -- count 4), possession of a firearm by a felon (§ 29800, subd. (a) -- counts 5 and 8), assault with a semiautomatic firearm (§ 245, subd. (b) -- count 6), and possession of ammunition by a felon (§ 30305, subd. (a)(1) -- count 7). The jury also found true allegations that defendant personally used a firearm in the commission of the felonies charged in counts 1, 2, 3, 4, and 6 (§§ 12022.5, subd. (a), 12022.53, subd. (b)),[2] and *674 the trial court found true allegations as to all counts that defendant had served five prior prison terms (§ 667.5, subd. (b)) and had committed the current offenses while released on bail in case Nos. 16F2193 and 16F2518 (§ 12022.1).[3]
The trial court imposed a total state prison term of 35 years 4 months, encompassing all three cases. As to case No. 16F4167, the sentence consisted of the following: on the count 6 conviction for assault with a semiautomatic firearm, the upper term of nine years, plus 10 years for the firearm use enhancement (§ 12022.5, subd. (a)); on the count 1 conviction for attempted carjacking, 10 months (one-third the middle term), plus three years four months for the firearm use enhancement (one-third the term); on the count 5 conviction for possession of a firearm by a felon, eight months (one-third the middle term); on the count 8 conviction for possession of a firearm by a felon, eight months *411 (one-third the middle term); five years for the prior prison term enhancements; and four years for the on-bail enhancements. In case No. 16F2518, the trial court imposed eight months (one-third the middle term) for possession of a billy club, and in case No. 16F2193, the trial court imposed one year (one-third the middle term) for receiving a stolen vehicle with a prior conviction. All sentences were run consecutive. The trial court stayed the remaining counts and allegations in case No. 14F4167 pursuant to section 654.
DISCUSSION
I-II**
III
Defendant argues the firearm use enhancement (§ 12022.5) on the count 4 conviction for carrying a loaded firearm with the intent to commit a felony ( § 25800 ) must be stricken. The Attorney General agrees, and so do we.
*675 Section 25800, subdivision (a) provides that "[e]very person who carries a loaded firearm with the intent to commit a felony is guilty of armed criminal action." The section 12022.5, subdivision (a) enhancement applies to "any person who personally uses a firearm in the commission of a felony or attempted felony ... unless use of a firearm is an element of that offense." The question presented is whether defendant's act of carrying a loaded firearm with intent to commit a felony involved the use of the firearm in the commission of the armed criminal action felony. By analogy to other appellate decisions construing similar statutes, we conclude it did not.
A gun use occurs in the commission of an offense if the use objectively facilitates the offense. ( People v. Wardell (2008) 162 Cal.App.4th 1484, 1495, 77 Cal.Rptr.3d 77.) In the case In re Pritchett (1994) 26 Cal.App.4th 1754, 1757, 33 Cal.Rptr.2d 296 ( Pritchett ), a jury found defendant Pritchett guilty of felony possession of a short-barreled shotgun (former § 12020, subd. (a)), and also found true a section 12022.5, subdivision (a) enhancement allegation that he personally used a firearm in the commission of the felony. The enhancement was based on Pritchett taking a sawed-off shotgun from a dresser drawer and striking his former girlfriend on the head with the barrel of the gun. ( Pritchett , at p. 1756, 33 Cal.Rptr.2d 296.) The appellate court directed the trial court to strike the enhancement ( id. at p. 1758, 33 Cal.Rptr.2d 296 ), reasoning: "Although Pritchett used the shotgun as a club during his possession of it, he did not use it 'in the commission' of his crime of possession. Possession was complete without use of the shotgun. In addition to possessing it, he did use it, but using it as a club in no way furthered the crime of possession. [Fn. omitted.] [¶] At most, Pritchett used the shotgun as an instrument of possession, or made 'possessory use' of the shotgun, in the commission of his crime of possession. However, if possessory use is a legally cognizable concept, it does not support a use enhancement because possessory use is an element of the crime of possession of a deadly weapon." ( Id. at p. 1757, 33 Cal.Rptr.2d 296, italics omitted.)
Almost a decade later, People v. Arzate (2003) 114 Cal.App.4th 390, 7 Cal.Rptr.3d 680 ( Arzate ) involved a defendant who used a gun hidden in his car to attempt to murder a police officer during a traffic stop. ( Id. at pp. 392-393, 7 Cal.Rptr.3d 680.) Among other things, the jury found Arzate guilty of carrying a concealable and concealed firearm in his vehicle (former § 12025, subd. (a)(1)), and also found true *412 an enhancement allegation that he personally used a firearm as to that offense (stayed by the trial court). ( Arzate , at pp. 398-399, 7 Cal.Rptr.3d 680.) The appellate court held: "[T]he offense of carrying a concealed firearm in a vehicle is committed with the single passive act of carrying the firearm in a concealed fashion in a vehicle.... [¶] ... [¶] In the factual context of this case the gun use ... [was] not committed in the commission of the static offense of carrying a concealed weapon in a vehicle. Accordingly, the jury's true findings and the gun use enhancement imposed *676 but stayed on the concealed firearm count must be stricken." ( Id. at pp. 400-401, 7 Cal.Rptr.3d 680, fns. & italics omitted.)
Like the provisions construed in Pritchett and Arzate , section 25800, subdivision (a) punishes the passive or static act of carrying a firearm with the intent to commit a felony, and the offense is complete when the firearm is carried with that intent. The fact that defendant used the firearm to commit attempted carjacking, attempted kidnapping, criminal threats, and assault with a semiautomatic firearm does not mean he used it in the commission of the section 25800 felony. (See Arzate, supra , 114 Cal.App.4th at pp. 400-401, 7 Cal.Rptr.3d 680 ; Pritchett, supra , 26 Cal.App.4th at p. 1757, 33 Cal.Rptr.2d 296.) His use of the firearm did not objectively facilitate carrying a loaded firearm with the intent to commit a felony. We will strike the section 12022.5 firearm use enhancement on count 4.
IV-VII***
DISPOSITION
Defendant's count 8 conviction for possession of a firearm by a felon is reversed, and the section 12022.5 firearm use enhancement on the count 4 conviction for carrying a loaded firearm with the intent to commit a felony is stricken. The remaining convictions are affirmed. The matter is remanded to allow the trial court to exercise its discretion whether to strike the firearm use enhancements on counts 1 and 6. On remand, the trial court is directed to stay sentence on the count 1 conviction for attempted carjacking and its associated firearm use enhancement, unless the trial court decides to strike the enhancement. The trial court shall resentence defendant, prepare an amended and corrected abstract of judgment, and forward a certified copy of the amended and corrected abstract of judgment to the Department of Corrections and Rehabilitation.
We concur:
DUARTE, J.
RENNER, J.

Undesignated statutory references are to the Penal Code.

The section 12022.53, subdivision (b) allegation, which provides for a 10-year enhancement for gun use in the commission of specified felonies and attempted felonies, was pleaded as to counts 1, 2, and 3. The section 12022.5, subdivision (a) allegation, which provides for a range of enhancements from three to 10 years for gun use in the commission of any felony or attempted felony, was pleaded as to counts 1, 2, 3, 4, and 6. As to count 3, the section 12022.53 allegation was erroneous because the statute does not cover the offense of making criminal threats. The trial court struck the jury's finding on that allegation at sentencing.

Defendant had already entered pleas in both cases. In case No. 16F2193, defendant pleaded no contest to receiving a stolen motor vehicle with a prior (§§ 496d, subd. (a)/666.5) and admitted one prior prison term, in return for the dismissal of a charge of theft of a motor vehicle with a prior and of two prior prison term enhancements. In case No. 16F2518, defendant pleaded no contest to possession of a billy club (§ 22210) in return for the dismissal of five prior prison term enhancements and an on-bail enhancement.

See footnote *, ante .

See footnote *, ante .